IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER JONES,

OPINION AND ORDER

Plaintiff,

15-cv-831-bbc

v.

ANDREA NELSON, LESLIE BAIRD (CHAPIN),
BRIAN NEUMAIER, JEREMIAH MILLARD,
ANDREW HOWELL and JONATHAN VETTER,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Prisoner and pro se plaintiff Christopher Jones has been allowed to proceed on claims that defendants Brian Neumaier, Jeremiah Millard, Andrew Howell, Jonathan Vetter and Leslie Baird violated his Eighth Amendment rights by refusing his repeated requests for medical care and that defendants Baird and Andrea Nelson committed medical malpractice under state law in their efforts to treat him.  Dkt. #21 at 4-8.  Each claim arises from the same set of events that occurred allegedly between July 7 and July 11, 2010, when, according to plaintiff, prison officials placed him in an observation cell because of concerns that he would harm himself and then had to rush him to a hospital several days later after he was found lying unconscious in the cell, having suffered an apparent seizure.  Defendants have filed a motion for summary judgment on exhaustion grounds, dkt. #26, which I am granting because I conclude that plaintiff failed to properly exhaust his administrative remedies before

1

filing this lawsuit.

Plaintiff has also filed a motion for assistance in recruiting counsel, dkt. #37, which I am denying because I find that plaintiff is capable of litigating issues relating to exhaustion. His ability to litigate any other matter is moot.

From the parties' proposed findings of fact and the record, I find that the following facts are not subject to genuine dispute. Because defendants have moved for summary judgment solely on exhaustion grounds, I have not included facts about the merits of plaintiff's claims unless they are relevant to the issue of exhaustion.

## UNDISPUTED FACTS

At all relevant times, plaintiff Christopher Jones was an inmate housed at the Columbia Correctional Institution. Plaintiff submitted numerous inmate grievances during his time there; defendants' records show that prison officials received 23 grievances filed by plaintiff between May 2008 and May 2016.

On July 11, 2010, prison staff took plaintiff to the hospital after they found him lying in a coma in his cell. After his discharge from the hospital on July 20, plaintiff still had physical limitations, so he was housed in a segregation unit and provided an inmate assistant (whose name plaintiff does not know) to help him with his daily prison life activities. On August 3, 2010, plaintiff asked the inmate assistant to "get an inmate complaint form and write a grievance about prison staff conduct between July 7-11, 2010." The inmate assistant responded to plaintiff that prison staff told him "not to worry about that, right now,

[plaintiff] can handle that complaint stuff after he fully recovers." Dfts.' Resp. Plt.'s PFOF ¶¶ 7-16, dkt. #40.

On September 7, 2010, plaintiff submitted an inmate grievance regarding health services staff work practices, raising privacy and sanitation concerns about nurses' alleged use of food carts to conduct blood tests or other medical testing. The reviewing complaint examiner noted that this issue was already the subject of another earlier complaint that had been addressed previously, and the grievance was dismissed. Plaintiff did not appeal that decision. Id. ¶ 22; dkt. #32-1, at 1-8.

On September 27, 2010, plaintiff submitted a grievance regarding an incident that he alleged had occurred on July 16, 2010. In that grievance, plaintiff alleged that he had slipped into a coma while in observation status after mental health services staff had failed to respond to his requests for help, despite knowing that plaintiff was a danger to himself. On September 30, 2010, defendant Millard, an inmate complaint examiner, rejected the grievance because it was submitted too late, citing Wisconsin Administrative Code § DOC 310.11(5)(d), which states that a complaint examiner may reject a grievance if "[t]he inmate submitted the complaint beyond the 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time lines." Defendant Millard noted that it is the inmate's responsibility to insure that a properly formatted complaint is received by the complaint examiner's office within the appropriate time. Plaintiff was provided a copy of the rejection of his grievance and informed that "per DOC 310.11(6), you may appeal the rejection of this complaint within 10 calendar days to

3

the appropriate reviewing authority.  The reviewing authority will only review the basis for the rejection of this complaint, not the merits of the complaint.  If you wish to appeal, complete form DOC-2182 Request for Review of Rejected Complaint."  Plaintiff did not appeal the rejection of this grievance.  Dfts.' Reply to Plt.'s Resp. Dfts. PFOF ¶¶ 13-18, dkt. #39.

Five years later, on September 29, 2015, the complaint examiner received another grievance from plaintiff, alleging that

> On Tuesday July 7, 2010, I notified prison security staff that [I] was going blind.  I was taken to the Restrictive Housing Unit, where I was placed in an observation cell.  I was seen by Andrea Nelson, a psychiatrist.  I advised Ms. Nelson that I was going blind and didn't feel well.  Ms. Nelson told me to "go lay down," without summoning help.  Later while confined in the observation cell in the Restrictive Housing Unit at Columbia Correctional Institution, I told security staff that I was feeling very bad.  I requested medical attention because I had blurred vision, dizziness, fatigued, dehydrated, leg cramps, and numbness.  The security staff denied my access to medical care and then walked away without getting any medical attention.  As a result, six to [sic] hours later, I was found comatosed, unresponsive in my own emesis, with a blood sugar that was too high to be recorded on Columbia Correctional Institution glucometer and had to be hospitalized for several days.

In the same September 29, 2015 grievance, plaintiff also wrote:

> I submit that good cause exists to accept my tardy grievance as I was told by staff at CCI to let the matter go.  For fear of retaliation, a fragmented memory, a learning disability, and heavily medicated (Seroquil, Metoprolol, Divalproex, Fluoxrtine, Lisinopsol, Sirvastatm).  After being able to walk about and not bedridde[n], I made several attempts to access the records related to my being hospitalized by contacting the record office, the head psychiatrist at CCI, to no avail.  However, a fellow inmate at CCI suggested that I contact the hospital that I was treated at.  Following his advice, I next wrote Divine Savor Hospital.  Specifically, on August 18, 2015, I requested documents from CCI.  In response, on August 19, 2015, K. Dutton-Deputy Custodian advised me that there are no documents found pertaining to your request for any institution investigation done pertaining to you for the time frame of

4

2010.  Subsequently, I wrote directly to Divine Savor Hospital and obtained relevant medical records detailing medical events which transpired in July of 2010, so it wasn't until last week that I became fully aware that CCI acted with gross negligence  and was deliberate indifferent to my serious medical needs, constituting good cause to excuse my tardy filing.

Complaint examiner Isaac Hart rejected this grievance as too late, finding no good cause to extend the time limit for filing.  Id. ¶ 19-22.  On November 10, 2015, plaintiff appealed this rejection to the reviewing authority, which found two days later that the grievance had been rejected appropriately in accordance with DOC 310.11.


OPINION

A.  Motion for Assistance in Recruiting Counsel

 Plaintiffs have no right to court appointed counsel in federal civil litigation, but this court may ask lawyers to represent indigent pro se litigants on a volunteer basis.  Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014).  If plaintiff wants the court to help him find a lawyer to volunteer to represent him, he must first show three things:  (1) he cannot afford to hire his own lawyer; (2) he has made reasonable efforts on his own to find a lawyer to represent him; and (3) his case is so complex or difficult (legally or factually) that he is unable to handle it on his own.  Id.; Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007).

Plaintiff is proceeding in forma pauperis in this case, so I assume that he cannot afford to hire a lawyer, and he has submitted one rejection letter from a law firm that has declined to represent him.  Dkt. #37-1.  Typically, the court requires more evidence than that to demonstrate reasonable efforts, but I will at least examine the third factor here.

Plaintiff contends that he has documented mental health problems, that he reads at below a fifth-grade level, and that to date he has relied heavily on the assistance of other inmates to help him file grievances and prepare documents for court. Plaintiff further argues that the issues in this case are factually and legally complex, involving complex medical evidence and likely expert testimony, such that he cannot handle it on his own. Dkt. #37, at 2 (citing Henderson v. Ghosh, 755 F.3d 559, 566 (7th Cir. 2014)).

This might be persuasive if plaintiff were in the position of having to prove his case at trial or otherwise litigate it on the merits, but up to this point he has merely sought to oppose defendants' motion for summary judgment on exhaustion grounds only. That task involves no complex medical evidence or legal argument, but rather simply requires plaintiff to explain what administrative remedies he sought and when, and why he failed to seek others in a timely manner. Plaintiff has shown that he is capable of doing this without counsel: he has filed a brief, a declaration and proposed findings of fact that are more than adequate to allow the court to address the question of exhaustion. The resolution of defendants' motion turns on the administrative record, not on any complex medical evidence or legal arguments. Thus, plaintiff cannot satisfy the third requirement and he is not entitled to the court's assistance in recruiting counsel at this stage in the proceedings. Accordingly, his motion for legal assistance will be denied.

B. Motion for Summary Judgment on Exhaustion Grounds

Defendants have moved for summary judgment on the sole ground that plaintiff has

failed to properly exhaust his administrative remedies, as required by 42 U.S.C. § 1997e. I must grant the motion if defendants show that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If defendants present evidence that plaintiff did not fulfill the exhaustion requirements, plaintiff must then show, at the least, that there is a genuine dispute about exhaustion in order to defeat defendants' motion for summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the record on summary judgment, I view all facts and draw all reasonable inferences in the light most favorable to plaintiff. Id. at 255.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Failure to exhaust thus requires dismissal of a prisoner's complaint. Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir. 1999). If possible, disputes about the application of this rule should be resolved before turning to the merits of a claim. Fluker v. County of Kankakee, 741 F.3d 787, 792-93 (7th Cir. 2013) (citing Perez, 182 F.3d at 536). Proper exhaustion requires inmates to file grievances and pursue their administrative remedies according to the

applicable prison policies and procedures.  "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" may be grounds for dismissal for failure to properly exhaust.  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006); see also Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.  Pozo filed a timely and sufficient complaint but did not file a timely appeal.  He therefore failed to exhaust his administrative remedies, and his federal suit must be dismissed.").

Wisconsin statutes and DOC regulations also require a prisoner to exhaust "all available administrative remedies that the department of corrections has promulgated by rule" before bringing a civil action complaining about conditions of confinement.  Wis. Stat. § 801.02(7)(b); Wis. Admin. Code § DOC 310.05.  Both the Court of Appeals for the Seventh Circuit and Wisconsin courts have recognized that prisoners must take full advantage of the institution's administrative grievance system before they can be said to have exhausted all available administrative remedies.  See, e.g., Hernandez v. Dart, 814 F.3d 836, 841-42 (7th Cir. 2016); Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001); Downing v. Raemisch, 2013 WI App 30, ¶ 18, 346 Wis. 2d 279, 827 N.W.2d 928; Staples v. Young, 149 Wis.2d 80, 88, 438 N.W.2d 567 (1989).

Under Wisconsin's  regulations, a prisoner must file a grievance within 14 calendar days after an alleged incident, although a late grievance may be accepted for good cause. Wis. Admin. Code § DOC 310.09.  A complaint examiner may either reject a grievance or

accept it, in which case he or she then recommends that the grievance be either dismissed or affirmed by the reviewing authority.  Prisoners may appeal adverse decisions.  Id. § DOC 310.07.

Defendants contend that plaintiff failed to exhaust his administrative remedies because his September 27, 2010 grievance regarding the July 2010 incident was inadequate for several reasons:  First, it was untimely, as it was filed more than two months after the July incident occurred.  (In his grievance, plaintiff said the incident occurred on July 16, but he now says it occurred between July 7 and 11).  Second, plaintiff did not provide good cause (or any reason) why the grievance should be accepted late, and third, he failed to appeal its rejection.  Plaintiff did not attempt to address these issues by explaining the delay or appealing the rejection) until more than *five years* later, in his September 29, 2015 grievance.

In response, plaintiff asserts three reasons for denying defendants' motion for summary judgment on exhaustion grounds: (1) prison officials interfered with plaintiff's attempts to file timely grievances and thus administrative relief was "unavailable" to him; (2) the grievance system prevented him from complaining about issues related to a conduct report; and (3) plaintiff's September 7, 2010 grievance should have satisfied his exhaustion requirement.

If plaintiff can show that any prison official prevented or interfered with his filing of a grievance, that would demonstrate the unavailability of an administrative remedy within the meaning of 42 U.S.C. § 1997e(a), at least for so long as the interference continued.  Ross

v. Blake, 136 S. Ct. 1850, 1860 (2016) (remedy unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); Kaba v. Stepp, 458 F.3d 678, 684-85 (7th Cir. 2006). Plaintiff says that he was unable to file a grievance while he was in the hospital, and that even after he was discharged he was still mentally and physically impaired, so he asked his unknown "inmate assistant" to help him file a grievance. The inmate assistant advised plaintiff that "prison staff" told him "not to worry about that, right now, I can handle that complaint stuff after I fully recover." Jones Decl. ¶16, dkt. #35.

Even if I assume that plaintiff's deadline was tolled while he was in the hospital, plaintiff presents no admissible evidence that any prison official actually prevented him from filing a grievance or interfered with his ability to do so after he was discharged. Rather, plaintiff offers only thirdhand testimony that someone told someone else to tell him "not to worry" about it, and that he could take his time waiting to file a grievance. (It is also worth noting that this explanation for the delay, which was absent from his grievances themselves, did not appear until after defendants moved for summary judgment on exhaustion grounds in this lawsuit.) This vague claim that unknown prison officials misled plaintiff about his deadline for filing a grievance for some period of time cannot support plaintiff's contention that he was prevented or somehow "thwarted" when he tried to use the administrative grievance process. Ross, 136 S. Ct. at 1860. As discussed below, it is too vague to stand up to scrutiny, but even if it were true, it would not make a difference because the evidence shows that it could not have been the reason for plaintiff's failure to

follow the grievance process.

Plaintiff's second argument is difficult to follow. He seems to allege that between August 3 and September 7, 2010, prison officials and administrative rules made it difficult for him to file grievances. However, he appears to be referring to grievances he wished to file regarding an unrelated incident or incidents, which involved a conduct report and disciplinary hearing relating to threats of self-harm he made in August 2010. These had nothing to do with the July incident that is the basis of plaintiff's allegations in this case, which means that this argument is irrelevant to the question of exhaustion here.

Third, plaintiff contends that his September 7, 2010 grievance satisfied the exhaustion requirement. However, plaintiff said nothing about the July incident in that grievance. Instead, he raised unrelated complaints against health services staff about blood or other medical testing procedures in the segregation unit. Even if that grievance *were* related to the events of this lawsuit, that would not help plaintiff because it still suffered from the same defects as the September 27 grievance: it was not timely because it was filed more than 14 calendar days after plaintiff was released from the hospital on July 20, it lacked an explanation of good cause to excuse the late filing; and plaintiff did not appeal the rejection.

Moreover, the fact that plaintiff was able to file this (unrelated) grievance on September 7 undercuts his argument that he was unable to file a grievance about the July incident before September 27, whether because of incapacity, confusion, administrative roadblocks or interference. And none of plaintiff's arguments addresses the fact that he

11

failed to appeal the rejection of his September 2010 grievances, which alone would be grounds for dismissal for failure to exhaust under well-established Seventh Circuit law. Pozo, 286 F.3d at 1025.

Plaintiff also contends more broadly throughout his brief that his mental illness and inability to read and write rendered the grievance process unavailable to him, and that the allegations of his claim are so serious, and the merits so strong, that he should be excused from any failures to properly exhaust his administrative remedies. Plaintiff's arguments regarding the importance and strength of his claim are irrelevant. I cannot look to the merits before resolving the issue of exhaustion, and I certainly cannot do so to excuse failure to comply with the exhaustion requirement. Ung v. Lappin, No. 06-C-494-C, 2007 WL 5465992, at *4 (W.D. Wis. Jan. 29, 2007). As to plaintiff's allegations of disability, even if there were occasion when he needed some extra time or assistance to fill out and submit grievances, the undisputed fact that he has managed to file numerous grievances in succession over the past few years, including one on September 7, 2010, shows that this administrative remedial process was generally available to him. Ross, 136 S.Ct. at 1859-60; Schultz v. Pugh, 728 F.3d 619, 620-21 (7th Cir. 2013); Owens v. Balow, 15-cv-489-bbc (W.D. Wis. March 27, 2017). Plaintiff frequently made use of that system; he simply failed to follow the timing, appeal and other applicable grievance procedures with respect to the claim he is bringing in this case. Such failure is a ground for dismissal. Woodford, 548 U.S. at 83-84; Pozo, 286 F.3d at 1025.

Defendants have met their burden to show that plaintiff failed to exhaust his

12

administrative remedies and plaintiff has failed to show that any exception to the general rule should apply. Accordingly, I am granting summary judgment in favor of the defendants and dismissing plaintiff's claims without prejudice. <u>Ford v. Johnson</u>, 362 F.3d 395, 401 (7th Cir. 2004); <u>Williams v. Tobiasz</u>, No. 13-cv-411-bbc, 2013 WL 3929985, at *2-3 (W.D. Wis. July 29, 2013).

ORDER

IT IS ORDERED that

1.	Plaintiff Christopher Jones's motion for assistance in recruiting counsel, dkt. # 37, is DENIED.

2.	The motion for summary judgment filed by defendants Andrea Nelson, Lesley Baird (Chapin), Brian Neumaier, Jeremiah Millard, Andrew Howell and Jonathan Vetter, dkt. #26, is GRANTED, and all claims against them are DISMISSED without prejudice for plaintiff's failure to exhaust his administrative remedies.

3.	The clerk of court is directed to enter judgment accordingly.

Entered this 24th day of July, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

13